UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL GAGLIARDI, | * | Civil Action No. |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| SACRED HEART UNIVERSITY, | * | MAY 23, 2017 |
| | * | |
| Defendant. | * | |
| | * | |

## COMPLAINT

The plaintiff, Paul Gagliardi ("Gagliardi" or "plaintiff"), by his counsel, Sullivan Heiser, complaining of the defendant herein, respectfully alleges as follows:

**NATURE OF THE CLAIMS**

1. This action is brought to remedy discrimination on the basis of sex in the terms and condition of employment and retaliation for opposition to unlawful practices, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et. seq.* ("Title VII"); the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), *et seq.*; Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681, *et. seq.* ("Title IX") and any and all other causes of action which are alleged and/or can be inferred from the facts set forth herein.

2. The Plaintiff seeks monetary relief including, but not limited to: back pay, front pay, compensatory and punitive damages; attorney's fees and the costs of this action; and any and all other appropriate legal and equitable relief pursuant to applicable state and federal law.

1

**JURISDICTION AND VENUE**

3.  Jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

4.  The action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, codified at 42 U.S.C. § 2000e, *et seq.*, the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), *et seq.*, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

5.  Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b) in that plaintiff Paul Gagliardi ("Gagliardi") resides in Connecticut, was employed by the defendant in Connecticut, his claims arose in this district, and substantial actions occurred in this district.

**EXHAUSTION OF REMEDIES**

6.  Gagliardi filed a timely claim with the Equal Employment Opportunity Commission (EEOC).

7.  The EEOC issued a "Right to Sue" Letter dated February 22, 2017. (Ex. A.)

8.  The plaintiff has commenced this federal lawsuit within ninety (90) days of the plaintiff's receipt of the Notice of Right to Sue and as a result, the plaintiff has fully complied with the administrative prerequisites of Title VII and all other applicable statutes.

9.  All conditions precedent to this lawsuit have been fulfilled.

## PARTIES

10. Gagliardi is a male resident of Connecticut who resides at 12 Ashman Court, Branford, Connecticut.

11. Sacred Heart University ("SHU") is a private, four-year college, located at 5151 Park Avenue, Fairfield, Connecticut.

12. At all material times, SHU was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.*

## FACTS

13. SHU is a member of the National Collegiate Athletic Association ("NCAA") and competes at the Division I level in most sports.

14. SHU is a member of the Northeast Conference in some sports.

15. As of today, SHU fields 13 men's athletic teams and 18 women's athletic teams, exclusive of clubs and intramural athletics.

16. Gagliardi was hired by SHU on or about September 20, 2006, as the Head Men's Tennis Coach at SHU.

17. Gagliardi remained the Head Coach until he was terminated by SHU on September 18, 2016.

18. During Gagliardi's tenure at SHU, he was designated a part-time employee.

19. Despite being designated as a part-time employee, Gagliardi worked a full-time schedule and worked twelve months out of the year.

20. During his tenure at SHU, Gagliardi was either the only or one of two Head Coaches at SHU who was not designated as a full-time employee.

21. As of 2016, none of the female head coaches at SHU were designated part-time.

22. As of 2016, none of the female first assistant coaches were designated part-time.

23. Gagliardi was originally paid $5,000 annually.

24. His annual wages increased to $20,000 effective February 1, 2016.

25. While Gagliardi was the Head Coach, the Men's Tennis Team shared an assistant coach with the Women's Tennis Team.

26. While Gagliardi was the Head Coach, the recruiting budget was exceptionally low in comparison to the other sports teams, particularly similar women's teams coached by females.

27. While Gagliardi was the Head Coach, the Men's Tennis Team had equipment and general budgets significantly below the women's teams coached by females.

28. Despite its shortcomings with respect to funding and assistant coaches, the Men's Tennis Team had significant success under Gagliardi's direction.

29. During his tenure, Gagliardi was named the Northeast Conference Coach of the Year on two occasions. Gagliardi was also named the ITA Regional Coach of the Year.

30. Gagliardi lead SHU's team to two NCAA Division I team championships.

31.    The Women's Tennis Team had a similar number of players as the Men's Tennis Team.

32.    The Men's Tennis Team played approximately 35 match dates per year, the Women's Tennis Team played approximately 30 match dates per year.

33.    The Head Coach of the Women's Tennis Team, who was male and also a part-time administrator, was paid an annual salary of $80,000.

34.    All of the teams at SHU that are coached by women have at least one full-time assistant coach assigned to the teams.

35.    All of the teams at SHU that are coached by women had a higher recruiting budget than the Men's Tennis Team.

36.    The Men's Tennis Team had lower budgets for travel and equipment and less access to athletic trainers than the women's teams coached by females.

37.    During his tenure as Head Coach, Gagliardi was expected to drive the team van to and from matches, while the female coaches were provided buses and drivers.

38.    Despite working less hours than Gagliardi, or comparable hours as Gagliardi, all of the female coaches at SHU were designated as full-time employees and provided all benefits commensurate with that designation.

39.    All of the women's teams participated in much less rigorous seasons than the Men's Tennis Team.

40.    For instance, the Women's Rugby Team played approximately 10 match dates per year as opposed to the 35 match dates played by the Men's Tennis Team.

41. The Women's Rugby Team Head Coach was designated a full-time employee at SHU.

42. The Women's Rugby Team had one full-time assistant coach assigned to the team, who was paid a Graduate Assistant stipend plus tuition.

43. Upon information and belief, the Women's Rugby Team recruiting budget was approximately $4,000 and its equipment budget was approximately $20,000, well in excess of the Men's Tennis Team budgets.

44. During Gagliardi's tenure as Head Coach, the female coaches of the following teams (and others) were designated full-time, received greater fringe benefits, were paid higher wages than Gagliardi, were assigned full-time assistants, and had higher recruiting and equipment budgets: rugby, equestrian, soccer, bowling, rowing, and field hockey.

45. The budget and support shortfalls caused Gagliardi to have to work more hours than the fully supported female coaches and women's team coaches.

46. Gagliardi often had to make payments out of his own pocket for recruiting expenses, travel expenses and to pay for equipment and uniforms for his players.

47. Gagliardi had to participate in fundraising activities for the Men's Tennis Team while many female coaches and women's team coaches did not because the funds were provided in the budgets.

48. During the course of his employment as a coach SHU, Gaglardi has performed work equal in skill, effort, and responsibility to the work of certain female employee coaches, who were paid a higher wage and received benefits to which he

6

was not eligible as a result of being designated as part-time. Those teams include rugby, equestrian, soccer, bowling, rowing, and field hockey. This constitutes a violation of 29 USC 206(d)(1).

49. Gagliardi brought his inequitable treatment to the attention of SHU's Athletic Department prior to his termination.

50. Gagliardi sought designation as a full-time employee based on the hours that he worked and comparison to the female head coaches who were designated full-time.

51. SHU did not address those issues and advised Gagliardi to stop raising the issues.

52. SHU then terminated Gagliardi, despite his success as a coach, in retaliation for his having raising the inequity issues with the administration.

53. SHU implemented and executed policies and customs in regard to its pay and support of coaches that resulted in the deprivation of Gagliardi's constitutional, statutory, and common-law rights.

## Count One
## Discrimination in Violation of Title VII

54. Gagliardi re-alleges and incorporates by reference Paragraphs 1 through 53 as if fully stated.

55. By the above acts and practices, SHU has discriminated against the plaintiff on the basis of his sex in violation of Title VII by paying him less than other, similarly-situated female coaches, by failing to provide the same benefits to him as female coaches, and by failing to provide the same support to him in the form of

recruiting, team travel, equipment, uniforms and supply budgets and provision of assistant coaches that was provided to female coaches.

56. Gagliardi has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

57. SHU engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

58. Gagliardi has incurred attorney's fees in pursuit of these claims.

### Count Two
### Retaliation in Violation of Title VII

59. Gagliardi re-alleges and incorporates by reference Paragraphs 1 through 53 as if fully stated.

60. By terminating Gagliardi, SHU retaliated against him for reporting his inequitable treatment in comparison to female coaches.

61. As a direct and proximate result of the conduct and acts of the defendant in violation of Title VII, the plaintiff has suffered and will continue to suffer irreparable injury, damage to his career and reputation, monetary and/or economic harm, including but not limited to: loss of past and future income, wages, compensation, seniority, tenure and other benefits of employment, as well as, emotional distress and physical pain and suffering, for which he is entitled to an award of monetary damages and other equitable relief.

62. SHU engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

63. Gagliardi has incurred attorney's fees in pursuit of these claims.

## Count Three
### Violation of the Equal Pay Act

64. Gagliardi re-alleges and incorporates by reference Paragraphs 1 through 53 as if fully stated.

65. SHU paid Gagliardi at a rate less than that paid to female coaches, who performed equal work, the performance of which required equal skills, effort, and responsibility, and that work was performed under essentially the same conditions as the plaintiff.

66. Gagliardi has suffered a loss of back pay as a result of the defendant's violation of the Equal Pay Act and has incurred attorney's fees in pursuit of these claims.

## Count Four
### Discrimination in Violation of Title IX

67. Gagliardi re-alleges and incorporates by reference Paragraphs 1 through 53 as if fully stated.

68. Upon information and belief, at all times relevant hereto, SHU has directly and/or indirectly received and continues to receive federal financial assistance.

69. By the above acts and practices, SHU has discriminated against the plaintiff on the basis of his sex in violation of Title IX by paying him less than coaches of women's teams and female coaches, by failing to provide the same benefits to him as

coaches of women's teams and female coaches, by failing to provide the same support to him in the form of recruiting budgets and provision of assistant coaches that was provided to the coaches of women's teams and female coaches.

70. As a direct and proximate result of the conduct and acts of the defendant in violation of Title IX, the plaintiff has suffered and will continue to suffer irreparable injury, damage to his career and reputation, monetary and/or economic harm, including but not limited to: loss of past and future income, wages, compensation, seniority, tenure and other benefits of employment, as well as, emotional distress and physical pain and suffering, for which he is entitled to an award of monetary damages and other equitable relief.

71. SHU engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

72. Gagliardi has incurred attorney's fees in pursuit of these claims.

## Count Five
### Retaliation in Violation of Title IX

73. Gagliardi re-alleges and incorporates by reference Paragraphs 1 through 53 as if fully stated.

74. By terminating Gagliardi, SHU retaliated against him for reporting his inequitable treatment in comparison to the coaches of women's teams and female coaches.

75. As a direct and proximate result of the conduct and acts of the defendant in violation of Title IX, the plaintiff has suffered and will continue to suffer irreparable injury, damage to his career and reputation, monetary and/or economic harm, including

but not limited to: loss of past and future income, wages, compensation, seniority, tenure and other benefits of employment, as well as, emotional distress and physical pain and suffering, for which he is entitled to an award of monetary damages and other equitable relief.

76. SHU engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under federal law.

77. Gagliardi has incurred attorney's fees in pursuit of these claims.

## PRAYER FOR RELIEF

Wherefore, the plaintiff prays that this Court:

1. Take jurisdiction over this matter;

2. Award compensatory and punitive damages as allowed by statute;

3. Award attorney's fees and costs, including expert witness expenses;

4. Grant plaintiff a trial by jury;

5. Grant such other and further relief as may be just and equitable.

PLAINTIFF,
PAUL GAGLIARDI

BY: /s/ ct23807
Theodore W. Heiser, ct23807
Sullivan Heiser
116 East Main Street
Clinton, Connecticut 06413
860-664-4440
860-664-4422 (fax)
twh@sullivanheiser.com
His attorney

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL GAGLIARDI, | * | Civil Action No. |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| SACRED HEART UNIVERSITY, | * | MAY 23, 2017 |
| | * | |
| Defendant. | * | |
| | * | |

## JURY TRIAL CLAIM

The plaintiff, Paul Gagliardi, claims a trial by jury on all claims triable by jury.

                                                               PLAINTIFF,
                                                                PAUL GAGLIARDI

                                                  BY:   /s/ ct23807
                                                                Theodore W. Heiser, ct23807
                                                                Sullivan Heiser
                                                                116 East Main Street
                                                                Clinton, Connecticut 06413
                                                                860-664-4440
                                                                860-664-4422 (fax)
                                                                twh@sullivanheiser.com
                                                                His attorney

# **EXHIBIT A**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Boston Area Office**

John F. Kennedy Federal Building
Government Center, Room 475
Boston, MA 02203-0506
Toll Free Number: (866) 408-8075
Boston Direct Dial: (617) 565-4805
Boston Direct Line: (617) 565-3200
TTY: (617) 565-3204
FAX: (617) 565-3196

Internet: www.eeoc.gov
Email: info@eeoc.gov

Paul Gagliardi
12 Ashman Ct
Branford, CT 06405

Re:  Gagliardi v. Sacred Heart University
     Charge No. 523-2017-00291

Dear Mr. Gagliardi:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission") has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have examined your charge based upon the information and evidence you submitted. You allege you were subjected to employment discrimination by Sacred Heart University, hereinafter referred to as Respondent, because of your sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act of 1963, as amended. Specifically, you alleged that as Head Coach for Men's Tennis, you were paid less than most female coaches of other non-revenue sports, were classified as part-time, did not have benefits, and did not have a full-time Assistant Coach, even though these female coaches had less responsibility than you did. You allege that because of your complaints about what you perceived to be a pay inequity, you were retaliated against with harsh and inaccurate evaluations, and ultimately fired from your position on 9/28/2016.

Based upon this analysis the Commission is unable to conclude that the information establishes a violation of Federal law on the part of Respondent. This does not certify that Respondent is in compliance with the statutes. No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice. Otherwise, your right to sue will be lost.

If you have any questions, please contact Anthony M. Pino, Jr., Enforcement Supervisor, at 1-617-565-3192, Monday to Friday, during normal business hours.

Sincerely,

_____ for
Kenneth An
Boston Area Office Director

FEB 2 2 2017
Date