# Exhibit D

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DOCKET NUMBER: 3:17-cv-00857-VAB

PAUL GAGLIARDI

                Plaintiffs,

VS

SACRED HEART UNIVERSITY

                Defendant.
_____

         DEPOSITION OF:    ROBERT HARDY

         DATE:             JUNE 25, 2018

         HELD AT:          116 East Main Street
                           Clinton, Connecticut

              EXAMINATION UNDER OATH of ROBERT

HARDY, the witness herein, taken by the

Plaintiff,pursuant to Section 13-27 through

13-32, of the Connecticut Practice Book, and

Notice, held at the above-mentioned time and

place, before Maria DiScioscia, CSR and Notary

Public of the State of Connecticut.

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

A P P E A R A N C E S:

Representing the Plaintiff(s):

          SULLIVAN HEISER
          116 East Main Street
          Clinton, Connecticut 06413

          BY: THEODORE W. HEISER, ESQ.

Representing the Defendant(s):

          CARLTON FIELDS
          One State Street, Suite 1800
          Hartford, Connecticut 06103

          BY: JONATHAN STERLING, ESQ.

Also present:

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

For instance, if the head coach is going to be terminated, do you automatically become involved in it?

A.  No.

Q.  Do you get involved when there are, for lack of a better term, sort of problem cases where there are more complicated factors to it?

MR. STERLING:  Objection.

A.  That's possible.

Q.  Were you directly involved in the process of terminating Paul Gagliardi?

A.  Yes.

Q.  What did you get involved in that particular case?

A.  Because I had been involved with Paul from the onset, when he originally wrote me back in October of 2015.

Q.  Okay.

A.  So typically if I'm already involved with someone, dealing with matters, then I stay involved.

Q.  Did you -- have you personally got involved in -- let's just use since Bobby Valentine's been the AD since that's a

MR. STERLING:  It's okay.

BY MR. HEISER:

Q.  Did you speak to Mike Guastelle about Paul's part-time versus full-time concerns?

A.  Could you repeat that?

Q.  I'm going to use the term "part-time issue," to describe, just generally, what Paul was raising as a concern.

Is that fair?

A.  Yes.

Q.  Did you speak to Mike Guastelle about Paul Gagliardi's part-time issue?

A.  Yes.

Q.  Do you recall on how many occasions?

A.  No.

Q.  Was it more than once?

A.  I don't know that.

Q.  With respect to what you remember about that conversation or conversations, can you tell me what Mike Guastelle said to you?

A.  About what?

Q.  About Paul's part-time issue?

A.  That -- again, without knowing what you're talking about from a timing

standpoint, because this, as you know, went over a period of time.

Mike did not believe that the number of hours that Paul was claiming that he worked was accurate.

Q.  And was that the number of hours -- when you refer to the number of hours, are you talking about the hours that were entered on Kronos?

A.  No, I was just referring to the number of hours he claimed he was working as head tennis coach for men's tennis.

Q.  Okay.  Do you know whether the coaches at Sacred Heart are required to out their time into Kronos?

A.  They've been instructed to do that.

Q.  How many of the coaches actually do put their time into Kronos?

A.  I don't know that.

Q.  You're aware that Paul Gagliardi did put his time into Kronos' for at least a period of time --

MR. STERLING:  Objection.

BY MR. HEISER:

Q.  Are you aware of that?

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

Q.   How does Sacred Heart determine whether a part-time employee within the athletics department is actually working part-time hours?

A.   Through tracking it.

Q.   On Kronos?

A.   Right.

Q.   There's no other process?

A.   Not that I'm aware of.

Q.   So I know you've got a couple of different statuses.  Obviously you've got full-time employees.

A.   Uh-huh.

Q.   Then there's part-time with benefits.

A.   Correct.

Q.   How many hours do you have to work to qualify for benefits?

A.   Full-time or part time?

Q.   Good question.  How many hours do you have to work to qualify for benefits full-time?

A.   35.

Q.   And how many hours do have you to work part time to qualify for benefits?

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

A.   20.

Q.   20?

A.   Anything less than 20 would be non-benefits eligible.

Q.   Okay.  And with the exception of Kronos, there's -- you're saying no other way the school tracks whether a part-time athletic department employee is working more than 20 hours a week?

A.   Not that I'm aware of.

Q.   When Paul Gagliardi first -- withdrawn.

Let me just show you.  We had some exhibits from the last two depositions that have already been marked.  I'm showing you what's been marked at Plaintiff's Exhibit 7.

Can you tell me what that document is?  And don't worry about the handwritten notes on there.  I'll tell you that those are -- my understanding is from Mike Guastelle deposition.  It's his handwritten notes on there.

A.   I can't tell you.

Q.   It says "Kronos worksheet" at top.

A.   Yep.

Q.  When that was -- speaking specifically to the full-time employee aspect of the issue, did you speak to anyone in the athletics department about his becoming a full-time employee?

A.  Yes.

Q.  Who did you speak to?

A.  Bobby Valentine, Brad Hurlbut, Mike Guastelle.

Q.  And do you have a recollection of how many times you spoke to Bobby Valentine about that issues?

A.  No.

Q.  Do you have any recollection of how many times you spoke to Brad Hurlbut about that issue?

A.  No.

Q.  And do you have any recollection of how many times you spoke to Mike Guastelle about that issue?

A.  No.

Q.  Do you recall speaking to each one of them individually or in a group, pairs?

A.  I don't recall.

Q.  Generally, what did Mike Guastelle

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

say to you about Paul's desire to be a full-time employee?

A. That the position didn't merit full-time status.

Q. Did he say why not?

A. I don't recall, no.

Q. What did Brad Hurlbut say to you about Paul wanting to be a full-time employee?

A. That the position didn't merit full-time status.

Q. And did he tell you why it didn't merit full-time status?

A. I don't recall.

Q. And what do you recall Bobby Valentine saying to you about Paul's desire to be full-time?

A. I don't recall.

Q. Julia Nofri is your executive directors on the hiring, firing side of things?

A. Julia is the executive director that manages or has oversight for employee relations.

Q. Is that the executive director for

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

comparative analysis with other NEC schools to determine whether their head coaches of tennis were full-time positions?

A.    I just don't remember.

Q.    Have you been asked to do that with respect to other coaching positions at Sacred Heart?

A.    Yes.

Q.    And do you recall ever having done that with respect -- or having been asked to do that with respect to the head mens tennis coach position?

A.    I -- I'm relatively sure that at some point in the process we looked at other NEC tennis coaches.  But it was probably more about the compensation.

Q.    The amount of the compensation?

A.    Right.

Q.    And you -- Sacred Heart recently hired a new men's and women's head tennis coach.  I forget his first name, Bowe-Wiegard, whatever his name is.

Do you know when he was hired a comparative analysis was request of other NEC coaches?

A.   I believe it helped make a decision to increase Mr. Gagliardi's compensation.

Q.   My understanding is that his salary was increased to $20,000 effective January 2016.  Do you recall that being the case?

A.   Yes.

Q.   Is it your recollection that that was the outcome of the concerns that he had raised with you in 2015 in general?

He raised the concerns with you, it's addressed, and the outcome was the rasing of his salary in January 2016 --

A.   So what's the question?

Q.   I'm asking you if that's what --

A.   Was he happy?

Q.   No.  No, I'm not asking you that one --

A.   So I don't think I understand.

Q.   What I'm asking is:  Is it your understanding that the raising of his salary in January of 2016, was that the outcome of his racing the concerns with you in 2015 and the school then addressing it?  "Concern raised," result being the school agreed to raise his salary to 20,000?

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

A.   Mr. Gagliardi lead me to believe that he was satisfied with the outcome of the increase at that time.

Q.   How did he lead you to believe that?

A.   He told me that.

Q.   What did he say to you?

A.   That he was satisfied with the outcome at that time.

Q.   Do you know if he was informed specifically about why the position would not been full-time?

A.   I don't recall that.

Q.   Do you know what factors are used to determine whether a head coach should be full-time versus part time?

A.   No.

Q.   Is that a determination that the human resources department is part of?

A.   Yes.

Q.   Is that -- what is the involvement of the human resources department in those decisions?

A.   The decisions for what?

Q.   Whether a head coach position would be part time or full-time.

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

A.   When it's set initially?

Q.   Yes.

A.   It's part of the -- the process involves determining from a job description of responsibilities whether or not a position is going to be full or part-time.

Q.   I'm wondering what human resources role is in that determination.

Are you developing those job descriptions, your department?

A.   It's done in conjunction with the department.

Q.   Who makes the final decision about whether a position is going to be full-time or part-time?

A.   It's a collaborative decision with the department -- between human resources and the department.

Q.   My understanding is that there are presently -- the head coach of men and women's golf is a part-time position, otherwise all of the women's sports have full-time head coaches.

As of 2015, there were two part-time men's coaches volleyball and tennis?

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

Do you have -- withdrawn.

Have any other coaches, to the best of your knowledge, gone to human resources to raise concerns about their part-time status?

A.   No.

Q.   Part-time versus full-time status?

A.   Not that I'm aware of.

Q.   Paul Gagliardi is the only one you're aware of?

A.   Yes.

Q.   I'm going to show you Plaintiff's Exhibit 8.  I will give a chance to read that --

A.   Okay.

Q.   -- unless you have read it recently.

A.   I'll reread it.

Q.   First question:  Exhibit 8, are those your notes?

A.   I believe so.

Q.   And these -- the first note is not dated?

A.   I see.

Q.   The next two are, but it does refer to an August 30, 2016 email --

A.   Yes.

resurfacing again.

Q.   When -- now your September 7, 2016 notes here refer to a meeting.  And there are four bullet point issues --

A.   Yep.

Q.   -- or concerns that you note.

The first is the number of hours he was working.

Tell me what Paul told you about the number of hours he was working.

A.   I don't remember specifically other than he was obviously exceeding what he was told to work, which was the 25 hours.

Q.   Did you have a discussion with Paul as to what he should cut out of his hours in order to work only the 25 hours agreed upon?

A.   No.

Q.   Did you have an opportunity to see Paul's PFP from -- do you know who PFP stands for?

A.   It stands for evaluation.

Q.   Yeah.  Did you have an opportunity to see Paul's PFP from 2015?

A.   When?

Q.   At any point in time?

athletics department HR problems?

A.    I don't.

Q.    You obviously take issue with his quoting you as having said, "I blame the athletic department for all my HR problems"?

A.    Yes.

Q.    Do you remember there being any discussion along those lines that could have perhaps been misquoted?

MR. STERLING:    Objection.

A.    I just don't recall.

Q.    Your next paragraph starts with:

"I'm now very concerned that Paul is intentionally being disruptive and seems to be creating unnecessary animosity between my department and athletics."

Was that conclusion you reached based on anything more than the September 16, 2016 email?

A.    No.

Q.    It was just that email?

A.    Yes.  Let me clarify something, and I think I mentioned this.  It was odd to me that he was persuing legal action and I -- I didn't know he was unhappy or disappointed at

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

C E R T I F I C A T E

I, Maria DiScioscia, a shorthand reporter and Notary Public within and for the State of Connecticut, do hereby certify:

That the witness(es) whose testimony is hereinbefore set forth, was duly sworn by me; and the foregoing transcript is a true record of the testimony given by said witness(es).

I further certify that I am not related, either by blood or marriage, to any of the parties in this action; and that I am in no way interested in the outcome of this matter.

Maria DiScioscia

Maria DiScioscia

Commission expires 4/30/22