**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| PAUL GAGLIARDI, | : Civil Action No.  3:17-cv-00857(VAB) |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| SACRED HEART UNIVERSITY, | : OCTOBER 26, 2018 |
| | : |
| Defendant. | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    A.    Legal Standard for Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . .2

    B.    Gender Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        1.    Title IX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.    Team Resources . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3.    Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

            a.    Title VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            b.    Equal Pay Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        4.    Discriminatory Pay Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            a.    Equal Pay Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                1.    Plaintiff has Established a Prima Facie Case . . . . . . . . . . . 12

                2.    Questions Surround Whether SHU's Acts
                      were Legitimate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

            b.    Title VII and Title IX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    C.    Retaliation Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    D.    Punitive Damages Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

**Page**

**CASES**

**FEDERAL COURT**

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

Aldrich v. Randolph Ctr. Sch. Dist., 963 F.2d 520 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . .    12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

Beck-Wilson v. Principi, 441F.3d 353 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

Belfi v. Prendergast, 1919 F.3d 129 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

Betterson v. HSBC Bank USA, 661 Fed. Appx. 87 (2nd Cir. 2016) . . . . . . . . . . . . . . . . . . . . .    6

Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) . . . . . . . . . . . . . . . .    17

Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93 (2d Cir. 2001) . . . . . . . . . . . . . . . .    4

Celotex Corp v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

Chin v. Port Auth. of N.Y. & New Jersey, 685F.3d 135 (2nd Cir. 2012) . . . . . . . . . . . . . . . .    9, 10

Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . .    17

Cronin v. Aetna Life Insur. Co., 46 F.3d 196 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . .    3

Danzer v. Norden Systems, Inc., 151 F.3d 50 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . .    3

Desir v. City of New York, 453 F.Appx. 30 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54 (2d Cir. 1987) . . . .    2

Feingold v. State of N.Y., 366 F.3d 138 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

Fox v. Pittsburg State Univ., 257 F.Supp.3d 1112 (D. Kan. 2017) . . . . . . . . . . . . . . . . . . . . .    7

Gallo v. Prudential Residential Services, Ltd., 22 F.3d 1219 (2d Cir. 1994) . . . . . . . . . . . . .    2

Hoffman v. Rubin, 193 F.3d 959 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Jarell v. Hosp. for Special Care, 2014 U.S. Dist. LEXIS 135735 (D.Conn, September 25,   6
2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Jute v. Hamilton Sundstrand Corp., 420 F.3d 166 (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . .   10

Kerzer v. Kingly Mfrg., 156 F.3d 396 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5

Kienzle v. GM, LLC, 903 F.Supp.2d 532 (E.D. Mich. 2012) . . . . . . . . . . . . . . . . . . . . . . . .   13

Lambert v. Genesee Hosp., 10 F.3d 46 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 10

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . .   4

McLee v. Chrysler Corp., 109 F.3d 130 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

Osborn v. Home Depot U.S.A., Inc., 518 F.Supp.2d 377 (D. Conn.2007) . . . . . . . . . . . . . . .   12

Quaratino v. Tiffany & Co., 71 F.3d 58 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5

Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . .   17

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . .   4, 5

Rivera v. Rochester Genessee Reg'l Transp. Auth., 702 F.3d 685 (2d Cir. 2012) . . . . . . . .   6

Russell v. Nebo Sch. Dist., No. 16-00273, 2017 U.S. Dist. LEXIS 108387 (D. Utah 2016). . .   7

Ryduchowski v. Port Auth. of N.Y. & N.J., 203 F.3d 135 (2nd Cir. 2000) . . . . . . . . . . . . . . .   12

Schwapp v. Town of Avon, 118 F.3d 106 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . .

Scott v. City of Sioux City, 68 F.Supp.3d 1022 (N.D. Iowa 2014) . . . . . . . . . . . . . . . . . . . .   9

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . .   4, 5

Tolan v. Cotton, 572 U.S. 572, 134 S.Ct. 1861 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

Toliver v. Cmty. Action Comm'n to Help the Econ., Inc., 613 F.Supp. 1070 (S.D.N.Y.   6

1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Urie v. Yale Univ., 331 F.Supp.2d 94 (D. Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

Winters v. Pa. St. Univ., 172 F.Supp.3d 756 (M.D.Pa. 2016) . . . . . . . . . . . . . . . . . . . . . . . . .    7


**SUPERIOR COURT**

Novotney v. Reed Elsevier, Docket No. C-3-05-424, 2007 U.S. Dist. LEXIS 66608

(S.D.Ohio, Sept. 10, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6


**STATUTES AND REGULATIONS**

29 C.F.R. § 1620.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

29 U.S.C. § 206(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

42 U.S. Code § 1981a(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PAUL GAGLIARDI,                          : Civil Action No.  3:17-cv-00857(VAB)
                                         :
                    Plaintiff,           :
           v.                            :
                                         :
SACRED HEART UNIVERSITY,                 : OCTOBER 26, 2018
                                         :
                    Defendant.           :

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION FOR SUMMARY JUDGMENT

COMES NOW, the plaintiff, Paul Gagliardi, and in support of his Opposition to Motion for

Summary Judgment, provides the following Memorandum of Law:

## FACTS

The plaintiff relies upon its Local Rule 56(a)(2) Statement of Facts and will address specific

facts herein as necessary.

## PRELIMINARY STATEMENT

Paul Gagliardi ("Gagliardi" or "the plaintiff") was the Head Men's Tennis Coach at Sacred

Heart University ("SHU" or "the defendant") from 2006 until his termination on September 28,

2016.  During his tenure as coach, the position was designated a part-time position.  Beginning

in 2015 through his termination, Gagliardi formally requested through his supervisors and the

Human Resources Department that his position be made a full-time position.  He specifically

advised that he believed he was working as much if not more than other coaches.  In particular,

he noted that several of the female coaches were working less or had less responsibility.  Yet,

1

those coaches were designated full-time while Gagliardi remained part-time.  Gagliardi advised SHU that he believed he was being discriminated against based on his gender.

In his reviews after raising these issues, the plaintiff's supervisors rated him more poorly claiming that he was not engaged and would not accept his part-time status.  At no point did school raise issues with his on-court coaching.  SHU terminated Gagliardi on September 28, 2016. The claimed reason for the termination was that Gagliardi had missed a tournament and was late to practices.

That basis is a pretext.  In fact, Gagliardi's direct supervisor had recommended termination prior to any discussion of tardiness or missing of matches.  There are significant questions of fact surrounding the issues of tardiness and the missed match.  Those issues preclude summary judgment on all counts of the Complaint.

## LAW AND ARGUMENT

### A.  Legal Standard for Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted only when a review of the entire record demonstrates "that there is no genuine issue of material fact" to be tried. Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986); Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 57 (2d Cir. 1987).  The moving party has the burden of proving that there is no genuine issue of material fact to be tried. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Gallo v. Prudential Residential Services, Ltd., 22 F.3d 1219, 1223 (2d Cir. 1994).  To grant summary judgment, "there must either be a lack of evidence in support of Plaintiff's position . . . or the evidence must be so overwhelmingly tilted in one direction that any

contrary finding would constitute clear error." <u>Danzer v. Norden Systems, Inc.</u>, 151 F.3d 50 (2d Cir. 1998)(citations omitted).

In determining whether there is a genuine issue of material fact, the court, on summary judgment, must resolve any and all inferences and ambiguities in favor of the party opposing summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Gallo</u>, 22 F.3d at 1223. If there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is improper. <u>Cronin v. Aetna Life Insur. Co.</u>, 46 F.3d 196, 203 (2d Cir. 1995).

It is well settled law that questions of fact are to be resolved by a jury. As such, summary judgment is inappropriate where questions of material fact exist. Those questions of material fact include weighing of evidence of motivation and intent and judging credibility. The U.S. Supreme Court recently addressed this issue and in definitive terms restated the accepted principle that the weighing of contested facts is the province of the jury. <u>Tolan v. Cotton</u>, 572 U.S. 572, 134 S.Ct. 1861, 1866 (2014). The Court reiterated its prior standard with respect to summary judgment that the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id.</u>

Courts assessing summary judgment motions in employment discrimination cases must take additional considerations into account beyond the traditional summary judgment standard. <u>Desir v. City of New York</u>, 453 F.Appx. 30, 33 (2d Cir. 2011).

> A trial court must be cautious about granting summary judgment to an employer when . . . its intent is at issue. Affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. Summary judgment remains appropriate in discrimination cases, as the salutary purposes of summary judgment--avoiding protracted, expensive

3

> and harassing trials--apply no less to discrimination cases than to .
> . . other areas of litigation.

Id. "[I]n an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001). "A court is to examine the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Id. at 102 (citations omitted). Summary judgment should be defeated where "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 103 (emphasis added) (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000)). Where an employer's intent is at issue, as is the case herein, circumstantial evidence may give rise to a genuine issue of material fact, warranting caution on the trial court's part before granting summary judgment. See Kerzer v. Kingly Mfrg., 156 F.3d 396 (2d Cir. 1998); McLee v. Chrysler Corp., 109 F.3d 130 (2d Cir. 1997).

**B. Gender Discrimination**

The defendant's Motion for Summary Judgment intertwined arguments about the plaintiff's various causes of action in sections dealing with overriding issues. This Memorandum addresses those arguments in the same order as raised by the defendant in the Motion.

The three-part burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248 (1981), governs the analysis of gender discrimination cases under Title VII. Kerzer, 156 F.3d at 400; Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995). Under this framework, the plaintiff bears the initial

4

burden of establishing a prima facie case which creates an inference of discrimination. Reeves, 530 U.S. at 142. The elements of the prima facie case are: (1) the plaintiff was a member of a protected class; (2) she satisfactorily performed the duties required by her position or was qualified for the position she sought; (3) she suffered adverse employment actions (such as demotion or discipline); and (4) either her position was ultimately filled by a male employee, or the adverse employment actions occurred under circumstances giving rise to an inference of discrimination. Kerzer, 156 F.3d at 401; Quaratino, 71 F.3d at 64.

The plaintiff's burden of establishing a prima facie case "is not onerous." Quaratino, 71 F.3d at 64 (quoting Burdine, 450 U.S. at 253). If the plaintiff establishes the prima facie case, the burden of production then shifts to the defendant to produce a legitimate non-discriminatory reason for its conduct. Reeves, 530 U.S. at 142. If the defendant does so, the inference of discrimination created by the prima facie case drops out of the picture. Id. at 142-43. The plaintiff then has the burden of proving that the reason proffered by the defendant is unworthy of credence, and therefore that gender discrimination was the defendant's true motivation. Id. at 143. "Although the presumption of discrimination 'drops out of the picture once the defendant meets its burden of production,' (citation omitted), the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993)). The law is clear that "'rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.'" Reeves, 530 U.S. at 147 (quoting St. Mary's, 509 U.S. at 511).

If the defendant successfully produces a non-discriminatory reason, the plaintiff must show, by sufficient evidence upon which a reasonable jury could conclude, by a preponderance of the evidence, that the non-discriminatory reasons provided are either false or pretextual, and therefore, the decision was discriminatory. <u>Novotney v. Reed Elsevier</u>, Docket No. C-3-05-424, 2007 U.S. Dist. LEXIS 66608 (S.D. Ohio, Sept. 10, 2007), <u>Jarell v. Hosp. for Special Care</u>, 2014 U.S. Dist. LEXIS 135735 (D.Conn, September 25, 2014). Pretext can be established by showing: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the adverse employment action; or (3) the proffered reason was insufficient to motivate the adverse employment action. <u>Novotney</u>, at 36. The evidence should demonstrate the existence of a genuine issue or issues whereby a reasonable jury could decide in the plaintiff's favor. <u>Rivera v. Rochester Genessee Reg'l Transp. Auth.</u>, 702 F.3d 685, 693 (2d Cir. 2012).

The defendant contends generally that because the decision-makers in this case were male, as is the plaintiff, that the plaintiff is unable to prove discrimination.  To that end, the plaintiff cites <u>Toliver v. Cmty. Action Comm'n to Help the Econ., Inc.</u>, 613 F.Supp. 1070, 1074 (S.D.N.Y. 1985).  <u>Toliver</u> is inapplicable to the present case. The discrimination alleged by the plaintiff in this case was intended to benefit the institutional defendant not any of the individual decision-makers who may personally have had no gender related animus.  However, the institution did have such an animus and there is evidence that the individual decision-makers made their decisions based on that animus toward male coaches and the plaintiff in particular.

Similarly, the defendant demands that the "same actor inference" be applied to this case because the plaintiff was hired by Mr. Guastelle and Mr. Guastelle recommended his termination. <u>See</u> <u>Betterson v. HSBC Bank USA</u>, 661 Fed.Appx. 87, 89 (2d Cir. 2016).  The inference

6

does not apply in this case. While Mr. Guastelle made the decision to hire the plaintiff in 2006 to be the Head Men's Tennis Coach, he was not the person who made the decision to terminate the plaintiff in 2016. Mr. Valentine was the final decision-maker with respect to the plaintiff's termination. (RV Dep. at 30, 41, 69.) As such, the same actor did not make both decisions. Moreover, the ten-year period between the plaintiff's hire and termination is too attenuated to apply the same actor inference to this case.

### 1. Title IX Is Not Preempted by Title VII

The defendant correctly notes that the Second Circuit has not determined whether Title VII preempts private claims for discrimination brought by employees of federally funded institutions pursuant to Title IX. Urie v. Yale Univ., 331 F.Supp.2d 94, 97-98 (D. Conn. 2004). There remains a split in authority on this issue.

Other district courts in multiple circuits have determined that there is a private right of action under both Title IX and Title VII for employees of academic institutions that receive federal funding. Fox v. Pittsburg State Univ., 257 F.Supp.3d 1112, 1122-23, n. 35 (D. Kan. 2017); Winters v. Pa. St. Univ., 172 F.Supp.3d 756, 774-75 (M.D.Pa. 2016); Russell v. Nebo Sch. Dist., No. 16-00273, 2017 U.S. Dist. LEXIS 108387 (D. Utah 2016). These cases rely on the failure of Title IX to explicitly address the preemption issue noting that if "Congress intended for Title VII to displace employment discrimination claims under Title IX, it could have drafted Title IX, which was enacted *following* Title VII, to state as much." (emphasis in original) Fox, 257 F.Supp.3d at 1123, n. 35. These recent district courts apply a sound interpretation of Title VII and Title IX that should be applied in this case. As such, Title VII does not preempt the plaintiff's Title IX discrimination claims.

7

### 2. Lack of Resources Did Cause Personal Harm to the Plaintiff

The defendant argues that the plaintiff has no standing to allege that a lack of team resources was discriminatory or retaliatory. The defendant misconstrues the plaintiff's claims. The plaintiff is not making a claim on behalf of the Men's Tennis Team or the players on his team. He is alleging, in part, that the failure to provide proper support in the way of certain team resources, while that same support was provided to female coaches, was discriminatory. The defendant cites no authority restricting the plaintiff from making such a claim and, as such, its argument must fail.

The defendant first notes that the plaintiff must show that he suffered an adverse employment action, which is "some personal loss or harm with respect to a term, condition or privilege of employment." Hoffman v. Rubin, 193 F.3d 959, 964 (8th Cir. 1999). The defendant's lack of support absolutely adversely impacted the plaintiff in a term or condition of employment. The defendant did not make him full-time, but expected him to work more than part-time hours in order to fulfill his coaching duties. (Gagliardi Aff. ¶ 9; MG Dep. at 48.) His failure to spend more time working on fundraising was specifically held against him in his reviews and was a consideration by Mr. Guastelle in recommending termination. (Ex. P at 5.) The defendant did not provide an assistant coach beyond a five-hour per week assistant shared with the Women's Tennis Team. Without that assistance and not being full-time, the plaintiff made his best efforts to fit a practice schedule into his work schedule at his second job. In doing so, he had the team start warming up at 3:00 pm for practices with an official starting time of 3:30 pm at which time he arrived and coached the team. (Gagliardi Aff. ¶¶ 44-47.) That practice, for which there is no

8

evidence of an adverse impact on the team, and which the school chose to define as being "late" for practice, was a specific basis for the plaintiff's termination.

The defendant's lack of support was part of a continuing violation. See Chin v. Port Auth. of N.Y. & New Jersey, 685F.3d 135, 155-56 (2d Cir. 2012). At a minimum, the lack of support is "background evidence" that supports the plaintiff's claims of discrimination and retaliation related to his termination. Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993).

### 3. Statute of Limitations

#### a. Title VII

The defendant alleges that certain of the plaintiff's claims under Title VII are precluded by the statute of limitations. Specifically, the defendant contends that the "part-time classification" of his position was a "discrete act" that occurred outside of the limitations period. That is false. The defendant discriminated against the plaintiff in a continuous manner with respect to his part-time status. That discrimination took the form of reduced resources, unfair expectations that could not be met by a part-time employee, and the refusal to make him a full-time employee. It is true that a single part-time classification may be considered a discrete act. Scott v. City of Sioux City, 68 F.Supp.3d 1022, 1034 (N.D. Iowa 2014). However, that is not the situation at hand in this matter.

The plaintiff continued to raise his concerns about being able to perform his duties as a part-time employee right up to the point of his termination. Defendant's Local Rule 56(a)(1) Statement ¶¶ 36, 37, 39, 41, 53.) The school continued to refuse his request to be made full-time and took action against him based on that status and in retaliation for his continued raising of the issue. The discrimination and retaliation were framed by contentions that he had a "lack

9

of commitment" and "could not accept" his part-time status. (Ex. J.) As such, there was no single discrete act with respect to the part-time status that would preclude any claims.

"[U]nder the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Chin, 685F.3d at 155-56 (quoting Lambert, 10 F.3d at 53 ("[E]vidence of an earlier alleged retaliatory act may constitute relevant 'background evidence in support of [a] timely claim.'")) Id. at 150 (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 176 (2nd Cir. 2005)). "Such background evidence 'may be considered to assess liability on the timely alleged act.'" Id.

There are questions of material fact with respect to the reasons for termination, the basis for declining the plaintiff's continuing requests, and whether the defendant acted in retaliation for the plaintiff continuing to raise these issues. At a minimum the defendant's continuing actions with respect to the part-time status must be considered as background evidence. More appropriately, the defendant's actions are all part of a continuing violation precluding the defendant's statute of limitations arguments with respect to Title VII.

### b. Equal Pay Act – Defendant Acted Willfully

The defendant correctly notes that the statute of limitations for Equal Pay Act ("EPA") claims is two years from the accrual of the claim or three years if the violation is willful. The defendant contends that there is no evidence that the defendant willfully violated the EPA thus limiting the claims to the two-year period from the date the complaint was filed – May 23, 2017. The plaintiff disagrees.

10

There is ample evidence that the defendant treated the plaintiff's continued requests to change his pay status to full-time with disdain.   Mr. Valentine testified that he thought the plaintiff going to Human Resources with the issue was "inappropriate" and "wrong". (Valentine Dep. at 146.)   Mr. Hurlburt was involved in the decision in 2016 to raise the plaintiff's pay somewhat, but to deny his request to be made full-time.  He at different times related to the pay and status issue referred to the plaintiff as a "liar" and told the plaintiff that he was "tired of your bullshit." (Ex. 10, Gagliardi Aff. ¶ 34.)  Mr. Hurlburt also justified the refusal to make the plaintiff full-time by claiming a lack of resources.  (Ex. J.)  That contention was clearly false, as the school replaced the defendant with a new coach who was paid $50,000, two and half times the plaintiff's salary.  (RV Dep. at 99.)  Mr. Guastelle accused the plaintiff of lying about his hours in order to justify his contention that the position should be full-time, but never even spoke to him about the hours. (MG Dep. at 170.)

The defendant's motivations are at issue.  There is ample evidence that the defendant acted in a willful manner with respect to its decisions regarding the plaintiff's pay and status.  Those motivation and intent questions concern material facts and must be left to the jury to decide.   As such, the defendant's claim that application of the three-year extended statute of limitations for the plaintiff's EPA claims is precluded must fail.

### 4.  Discriminatory Pay Claims

#### a.  Equal Pay Act

The Equal Pay Act requires that employees of all genders must be paid equally for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which

11

are performed under similar working conditions." 29 U.S.C. § 206(d)(1). An EPA plaintiff must

establish a prima facie case by showing:

> (1) that the employer pays different wages to employees of the opposite sex;
>
> (2) that the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and
>
> (3) that the jobs are performed in similar working conditions.

Ryduchowski v. Port Auth. of N.Y. & N.J., 203 F.3d 135, 142 (2d Cir. 2000). The EPA "creates a

type of strict liability" and the plaintiff has no burden to establish the employer acted with a

discriminatory intent. Id.

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to

prove that the pay disparity was justified by one of four statutory defenses: (1) a seniority system;

(2) a merit system; (3) a system based on quantity or quality of production; or (4) some other

non-gender-based factor implemented for a legitimate business reason. Belfi v. Prendergast,

1919 F.3d 129, 136 (2d Cir. 1999). The employer faces a "heavy burden" in rebutting the

plaintiff's prima facie case as the statutory defenses are to be narrowly construed. Osborn v.

Home Depot U.S.A., Inc., 518 F.Supp.2d 377, 384 (D. Conn.2007) (citing Ryduchowski, 203 F.3d

at 143.) In assessing an employer's implication of one of the statutory defenses, the issue to be

addressed is whether the justification was "used . . . reasonably in light of the employer's stated

purpose as well as other practices." Id. (citing Aldrich v. Randolph Ctr. Sch. Dist., 963 F.2d 520,

524 (2d Cir. 1992).

### 1. Plaintiff has Established a Prima Facie Case

12

The plaintiff remained a part-time employee, while all female coaches were or became full-time. He made numerous requests for full-time status noting that he was working as much if not more than the female coaches. There is no question that the jobs were performed in similar working conditions. As such, the plaintiff has set forth sufficient evidence to establish a prima facie case for a violation of the EPA.

The term "wages" as applied to the EPA means all forms of payment or compensation. 29 C.F.R. § 1620.10. A plaintiff can establish an EPA violation if he establishes that the employer paid him "less compensation – however measured" than female counterparts for the same work. Kienzle v. GM, LLC, 903 F.Supp.2d 532, 544 (E.D. Mich. 2012).

Although jobs must be similar, there is no requirement under the EPA that the jobs must be identical. Beck-Wilson v. Principi, 441F.3d 353, 359 (6th Cir. 2006). "Because the comparison at the prima facie stage is of the jobs and not the employees, only the skills and qualifications actually needed to perform the jobs are considered." Id. at 363. More specific factors applying to the individual are considered as a defense, not at the prima facie stage. Id.

Kienzle is on point. In that case, the female plaintiff worked for GM and supervised seven male engineers. The plaintiff worked as a flexible service employee, a designation that limited her hours to less than full-time and prohibited her from being paid for any time worked over her limit. The male engineers working under her were all full-time exempt employees and were paid for overtime hours at times. The plaintiff alleged that she had to work more than her designated number of hours in order to complete her job duties and that she had requested that she moved to full-time status. The plaintiff alleged an EPA violation based in part on GM's failure to make her a full-time employee. Kienzle, 903 F.Supp.2d at 536-39.

13

GM argued that it was entitled to summary judgment because the EPA applies only to the "hourly rate of pay, not the number of hours worked." Id. at 543. The Court disagreed and denied GM's summary judgment. It held that if the plaintiff could show that she was paid less because of her part-time classification than if she had been full-time, "that suffices to show a pay disparity."

The plaintiff herein makes a similar claim. The plaintiff alleges that he worked more than his designated twenty-five hours per week and he also requested numerous times that his status be changed to full-time. All of the female head coaches at SHU were full-time. There is ample evidence to show that the job duties and qualifications for the plaintiff's part-time position were similar to those for the full-time female positions. As such, there is more than sufficient evidence to present this issue to a jury.

### 2. Questions Surround Whether SHU's Acts Were Legitimate

The defendant contends that it had a legitimate business reason for continuing to deny the plaintiff's requests that his position be made full-time. Mr. Hurlburt contended that the decision to keep the position part-time was based on a lack of resources. (Ex. J.) However, the lack of resources claim is refuted by the school's own decision to pay the new tennis coach around $50,000, two and half times what the plaintiff was paid. Although the new coach took over head coaching duties for both the Men's and Women's teams, there is no evidence that the school reduced any resources on the women's side to cover the additional cost of the new coach. In fact, Mr. Guastelle, the former women's coach, remained employed in his Senior Associate Athletic Director position and there is no evidence in the record to indicate that his salary was reduced in any way because he no longer had his coaching duties.

14

On the other hand, when the issue of changing the plaintiff's status was brought to Mr. Guastelle, he did not think it was merited because he did not think Mr. Gagliardi worked sufficient hours to justify a full-time status. (MG Dep. at 128-29, 170-71.) That is a very different basis than a lack of resources as cited by Mr. Hurlburt. Moreover, there is no evidence presented by the defendant to show what hours those designated as full-time actually work. Without that evidence, it is not possible to know whether Mr. Guastelle's contention is reasonable if, for instance, the plaintiff worked thirty hours a week and the Women's Rugby coach also worked thirty hours per week.

### b. Title VII and Title IX

The plaintiff has successfully alleged a prima facie case for discrimination based on gender under both Title VII and Title IX. The plaintiff alleges sufficient facts to demonstrate, or at least to draw a reasonable inference, that gender discrimination was intended in the decisions regarding his pay and his part-time employment status. The facts alleged by the defendant to support the contention that there were non-discriminatory reasons for his disparate treatment are pretextual and, in several cases, challenged as false by the plaintiff.

The plaintiff began to actively campaign for full-time status because his duties as Head Men's Tennis Coach required more hours than 25 hours per week, and because it was clear to him that he was being treated in a disparate way from all female head coaches at SHU. In response, Mr. Hardy told him to strictly adhere to the 25 hour per week dictate. (Gagliardi Aff. ¶ 32). Thereafter, his performance evaluations began questioning his "commitment" and he was criticized for his strategies to adhere to his hours, such as having the team begin warming up a half-hour before he arrived for practices. (Ex. J, P.) This strategy was falsely labeled by defendant

15

as "arriving late" and "forc[ing] the players to start running the practices themselves." (Defendant's Rule 56(a)(1) Statement, ¶¶ 72-74). According to the plaintiff, practices started at 3:30 p.m. and ran for 2 ½ hours. He was having the players warm up at 3:00 p.m. before he arrived. (Gagliardi Aff. ¶¶ 44-47.) Despite Valentine's contention that he spoke to Plaintiff about these "punctuality issues," plaintiff contends that Valentine never spoke to him about punctuality or any other aspect of Plaintiff's job performance. (Gagliardi Aff. ¶ 61).

The defendant's allegations regarding a tournament at the University of Connecticut raise a number of key issues of material fact. Mr. Guastelle alleges that a meeting occurred on September 11, 2016, between himself, the plaintiff and Mr. Cook, to discuss coverage of the tournament. (Defendant's Rule 56(a)(1) Statement ¶ 77). The plaintiff alleges that he was not at a meeting on that date; he was at a tennis tournament in Branford on September 11, 2016 and did not go to the SHU campus at all on that date. (Gagliardi Aff. ¶ 37). According to the plaintiff, Mr. Guastelle and the plaintiff spoke about the UConn tournament that week, and they determined that Mr. Cook would cover the tournament on Friday because the plaintiff was not able to attend on that date. (Gagliardi Aff. ¶ 41). Mr. Cook broke his ankle before that Friday, so he was unable to attend the tournament. (Gagliardi Aff. ¶ 42). The defendant's characterization of this event as "the last straw" that lead to his termination could reasonably be viewed as pretextual by a jury.

No female head coaches at SHU were required to do what is essentially full-time work on a part-time schedule like the plaintiff. Because he complained about this gender discrimination, the plaintiff was set up to fail. The pretextual and questionable nature of the reasons the

16

defendant now gives for the plaintiff's disparate treatment and ultimate firing serve as strong circumstantial evidence of the defendant's intent to discriminate.

### C. Retaliation Claims

To make out a prima facie case of retaliation, the employee must show: (1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) a materially adverse action; and (4) a causal connection between the protected activity and the adverse action. See Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006); Feingold v. State of N.Y., 366 F.3d 138, 156 (2d Cir. 2004); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998). Protected activity includes making a complaint to a superior as well as a complaint in a judicial forum. Feingold, 366 F.3d at 156. In addition, to establish that she engaged in protected activity, the plaintiff need only establish that she had a good faith belief that she had been discriminated against in violation of the law. Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993).

The anti-retaliation provision of Title VII is not limited to discriminatory actions that affect the terms and conditions of employment, and therefore the plaintiff need not show that she suffered an adverse employment action. Burlington Northern, 548 U.S. at 64. Any materially adverse action that would deter a reasonable person from filing a charge of discrimination constitutes actionable retaliation. Id. at 68. The causal relationship element may be established by circumstantial evidence, including that the adverse action followed closely in time after the plaintiff engaged in protected activity, or evidence that other employees who engaged in similar conduct were treated differently. The plaintiff also may show retaliatory animus through direct

evidence of retaliatory statements or policies of the defendant or its agents. Feingold, 366 F.3d at 156; Cosgrove, 9 F.3d at 1039.

There is more than sufficient evidence to raise questions of material fact as to the plaintiff's retaliation claims under Title VII and Title IX. In the two months prior to his termination, the plaintiff specifically raised with Human Resources and his supervisors the fact that he believed he was being discriminated against based on his gender. He continued to ask that his work status be changed to full-time.

The defendant's response to his requests was to deny them and then to become hostile toward him. Mr. Hurlburt called the plaintiff a liar and told him that he was "sick" of his "bullshit." (Ex. 10; Gagliardi Aff. ¶ 34.)   Mr. Guastelle alleged that the plaintiff was lying about his hours, but never spoke to the plaintiff about those hours. (MG Dep. at 170-71.)  Instead he alleged that the plaintiff was no longer committed to the position and recommended that he be terminated. (Ex. P.)

The defendant alleges that the plaintiff was late to practices.  There are questions of material fact about whether that is true or a viable basis for termination or any adverse action. (Gagliardi Aff.. ¶¶ 44-47.)  The defendant claims that he missed a match and that he did not advise his supervisor until the last minute.  However, there are questions of material fact about those circumstances and the fact that the plaintiff had actually arranged for coverage until Mr. Cook broke his ankle.

The defendant claims this was part of a continuing problem.  However, Valentine never reviewed the plaintiff's performance evaluations or was asked to do so.  (RV Dep. at 133.)  He was normally asked to do so, on close to twenty occasions, when a coach was a continuing

18

problem or there was a necessity to do so. (Id.) The fact he was never even asked to look at the situation or the evaluation belies the claim that the tardiness and commitment to the team were issues of any significance or the real basis for termination. More likely, it is evidence of pretext for getting rid of the employee who was complaining about his work status and alleging discrimination.

Moreover, and most important, Mr. Guastelle recommended termination and human resources agreed without any reference to the missed match or tardiness to practice. (Ex. R.) The performance evaluation presented to the plaintiff immediately before his termination made no mention of missed matches or being late to practices. (Ex. P.) Instead, there are references to a lack of commitment and failure to accept his part-time status. A reasonable jury could easily infer from these facts that the defendant's decision was based on the plaintiff's protected activity in raising his pay status and discrimination concerns with human resources and his supervisors.

### D. Punitive Damages Claim

Employment discrimination law suits allow complaining parties of willful discrimination to recover punitive damages. 42 U.S. Code § 1981a(b)(1). The verbal abuse leveled at the plaintiff by Hurlburt, Deputy Director of Athletics (Gagliardi Aff. ¶ 34), when the plaintiff requested a change to full-time status and raised his gender discrimination claim, certainly qualifies as "malice or reckless indifference" to the complaining party's rights. Guastelle exhibited that mailice by claiming that the plaintiff was lying about his hours without investigating or even speaking to the plaintiff. (MG Dep. at 81.) Valentine exhibited that malice in noting that the plaintiff was "inappropriate" and "wrong" in raising his issues with Human Resources. (RV Dep. at 74.) Finally, there is sufficient evidence that a reasonable jury could find that the defendant's stated reason

19

for termination is false as a recommendation for termination was made by Guastelle without any reference to the now claimed basis. (Ex. P, R.)  The defendant exhibited malice and reckless indifference toward the plaintiff, and in fact fired him in retaliation, for his protected activity. The plaintiff has alleged sufficient facts to make a claim for punitive damages.

<u>**CONCLUSION**</u>

WHEREFORE, for those reasons set forth herein, the defendant's Motion for Summary Judgment should be denied as to all counts.

PLAINTIFF,
PAUL GAGLIARDI

BY:____ct23807_____
        Theodore W. Heiser
        ct23807
        Sullivan Heiser
        116 East Main Street
        Clinton, Connecticut 06413
        Telephone: (860) 664-4440
        Facsimile: (860) 664-4422 (fax)
        twh@sullivanheiser.com

20

## CERTIFICATION OF SERVICE

I HEREBY CERTIFY that on this date a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

__ct23807_____
Theodore W. Heiser, Esq.

21