# Ex. 3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DOCKET NUMBER: 3:17-cv-00857-VAB

PAUL GAGLIARDI

     Plaintiffs,

VS

SACRED HEART UNIVERSITY

     Defendant.

_____

DEPOSITION OF:    ROBERT HARDY

DATE:             JUNE 25, 2018

HELD AT:          116 East Main Street
                  Clinton, Connecticut

EXAMINATION UNDER OATH of ROBERT HARDY, the witness herein, taken by the Plaintiff,pursuant to Section 13-27 through 13-32, of the Connecticut Practice Book, and Notice, held at the above-mentioned time and place, before Maria DiScioscia, CSR and Notary Public of the State of Connecticut.

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

A P P E A R A N C E S:


Representing the Plaintiff(s):


        SULLIVAN HEISER
        116 East Main Street
        Clinton, Connecticut 06413


        BY: THEODORE W. HEISER, ESQ.


Representing the Defendant(s):


        CARLTON FIELDS
        One State Street, Suite 1800
        Hartford, Connecticut 06103

        BY: JONATHAN STERLING, ESQ.


Also present:

compensation for a coach, if a coach is concerned about their compensation level, is it appropriate for that coach to inquire or raise their concerns with the human resources department?

MR. STERLING:  Objection.

A.  It would be more likely that they would raise it with their supervisor first and then come to human resources.

Q.  Is there anything inappropriate with them bringing it to human resources?

A.  No.

Q.  How about with respect to employees part-time versus full-time status, would that be an appropriate concern to bring to human resources?

MR. STERLING:  Objection.

A.  Yes.

Q.  And exempt versus nonexempt status, would that be appropriate to bring to human resources?

A.  Yes.

Q.  And obviously those could be overlapping concerns.

And how about in general working

standpoint, because this, as you know, went over a period of time.

Mike did not believe that the number of hours that Paul was claiming that he worked was accurate.

Q. And was that the number of hours -- when you refer to the number of hours, are you talking about the hours that were entered on Kronos?

A. No, I was just referring to the number of hours he claimed he was working as head tennis coach for men's tennis.

Q. Okay. Do you know whether the coaches at Sacred Heart are required to out their time into Kronos?

A. They've been instructed to do that.

Q. How many of the coaches actually do put their time into Kronos?

A. I don't know that.

Q. You're aware that Paul Gagliardi did put his time into Kronos' for at least a period of time --

MR. STERLING: Objection.

BY MR. HEISER:

Q. Are you aware of that?

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

A.    No, I'm not.  I'm not sure if that's correct.

Q.    Okay.  What makes you hesitate on whether that's correct or not?

A.    My understanding was that there was an inconsistency in the tracking of the hours and whether or not it was Kronos or his own records.  I just don't know what it was.

Q.    Okay.  Was -- do you have a sense of how many of the -- of the coaches are putting -- let's use the 2015, 2016 timeframe.

How many of the coaches were putting their time into Kronos?

A.    No.

Q.    Do you know whether it was more than half?

A.    I don't know at all.

Q.    How -- does your department use Kronos in any way?

A.    Yes.

Q.    In -- in what way?

A.    Could you clarify that, when you say your department using it?

Q.    Sure.

Who within your department uses the

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

information that's put into Kronos?

A. As employees?

Q. Sure. Let's do it as employees.

A. Yes, we all use it.

Q. To put in your own hours?

A. We're tracking our time out, vacation, bereavement, personal days.

Q. Do hourly employees at the school use Kronos to put their time in for payroll purposes?

A. I don't know that. We don't have that many hourly employee any more. So I'm not sure if they're tracking them or not.

Q. When -- you said before that the coaches have been asked to put their time in to Kronos.

Is that just there time-out vacation, et cetera, or just their daily hours?

MR. STERLING: Objection.

You can answer.

A. I believe they're tracking their hours, their working hours.

Q. And do you know why they're tracking their work hours?

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

A.   Most of this was a result of the Affordable Care Act.

Q.   And what was the implication that was raised by the Affordable Care Act that required that --

A.   I'm sorry.

Q.   Sure.

I've seen mentioned the Affordable Care Act requiring in some manner that the coaches hours be tracked, but I haven't really seen an explanation as to why the hours need to be tracked because of the ACA.

A.   Benefits.  I'm sorry.

Q.   That's okay.  So it's a benefits issue?

A.   Yes.

Q.   And how -- what was the issue with the benefits?

A.   To assure that they're meeting the threshold of the required hours, if in fact the position is benefits eligible.

Q.   Other than Kronos, is there any other system that Sacred Heart uses to track the hours of athletics department employees?

A.   Not that I'm aware of.

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

Q.  How does Sacred Heart determine whether a part-time employee within the athletics department is actually working part-time hours?

A.  Through tracking it.

Q.  On Kronos?

A.  Right.

Q.  There's no other process?

A.  Not that I'm aware of.

Q.  So I know you've got a couple of different statuses.  Obviously you've got full-time employees.

A.  Uh-huh.

Q.  Then there's part-time with benefits.

A.  Correct.

Q.  How many hours do you have to work to qualify for benefits?

A.  Full-time or part time?

Q.  Good question.  How many hours do you have to work to qualify for benefits full-time?

A.  35.

Q.  And how many hours do have you to work part time to qualify for benefits?

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

A. 20.

Q. 20?

A. Anything less than 20 would be non-benefits eligible.

Q. Okay. And with the exception of Kronos, there's -- you're saying no other way the school tracks whether a part-time athletic department employee is working more than 20 hours a week?

A. Not that I'm aware of.

Q. When Paul Gagliardi first -- withdrawn.

Let me just show you. We had some exhibits from the last two depositions that have already been marked. I'm showing you what's been marked at Plaintiff's Exhibit 7.

Can you tell me what that document is? And don't worry about the handwritten notes on there. I'll tell you that those are -- my understanding is from Mike Guastelle deposition. It's his handwritten notes on there.

A. I can't tell you.

Q. It says "Kronos worksheet" at top.

A. Yep.

resurfacing again.

Q. When -- now your September 7, 2016 notes here refer to a meeting. And there are four bullet point issues --

A. Yep.

Q. -- or concerns that you note.

The first is the number of hours he was working.

Tell me what Paul told you about the number of hours he was working.

A. I don't remember specifically other than he was obviously exceeding what he was told to work, which was the 25 hours.

Q. Did you have a discussion with Paul as to what he should cut out of his hours in order to work only the 25 hours agreed upon?

A. No.

Q. Did you have an opportunity to see Paul's PFP from -- do you know who PFP stands for?

A. It stands for evaluation.

Q. Yeah. Did you have an opportunity to see Paul's PFP from 2015?

A. When?

Q. At any point in time?

PAUL GAGLIARDI vs. SACRED HEART UNIVERSITY
Robert Hardy on 06/25/2018

terminated in the end?

A.  Yes.

Q.  Why was that?  What was the reason?

A.  Well, the biggest reason was Paul was missing practices and matches as a result of what I understood to be his other full-time position.

Q.  Do you know how many matches Paul missed?

A.  Not specifically, no.

Q.  Do you know how many practices Paul missed?

A.  I don't remember.

Q.  When did the issue of Paul missing practices or matches first get raised --

MR. STERLING:  Objection.

BY MR. HEISER:

Q.  -- at least that you're aware of?

A.  I don't remember.

Q.  That was not an issue that was discussed in the September 7th meeting with Paul or September 20th meeting with Mike and Julia?

A.  I don't recall.

Q.  At least your notes which are