MANDATE

20-629-cv
*Gagliardi v. Sacred Heart Univ.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of March, two thousand twenty-one.

PRESENT:
        BARRINGTON D. PARKER,
        GERARD E. LYNCH,
        JOSEPH F. BIANCO,
           *Circuit Judges*.

---

PAUL GAGLIARDI,

    *Plaintiff-Appellant*,

v.                                                    20-629-cv

SACRED HEART UNIVERSITY,

    *Defendant-Appellee*.

---

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | THEODORE W. HEISER, (Kristi D. Kelly, *on the brief*), Suisman, Shapiro, Wool, Brennan, Gray & Greenberg, P.C., New London, CT. |
| FOR DEFENDANT-APPELLEE: | JAMES M. SCONZO, (Jonathan C. Sterling, *on the brief*), Carlton Fields, Hartford, CT. |

MANDATE ISSUED ON 04/21/2021

Case 3:17-cv-00855-VAB Document 76 Filed 04/21/21 Page 2 of 10

Case 19-2832, Document 152, 04/21/2021, 3080421, Page2 of 10

Appeal from a judgment of the United States District Court for the District of Connecticut (Bolden, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Paul Gagliardi, the former men's tennis head coach for Defendant-Appellee Sacred Heart University ("SHU"), appeals from the July 16, 2019 ruling and order and the July 19, 2020 judgment of the United States District Court for the District of Connecticut (Bolden, *J.*), granting SHU's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Specifically, he challenges the dismissal of his claims of gender-based discrimination and retaliation, which he brought against SHU under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681, *et seq.*[1] According to Gagliardi, he was subject to gender-based discrimination because of his part-time classification, as well as the level of pay and resources provided to him as a coach, when compared to similarly-situated female coaches. He further asserts he was retaliated against for reporting his inequitable treatment, which resulted in his termination. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

---

[1] The amended complaint also asserted a claim under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), *et seq.*, which alleged that Gagliardi was paid less than female coaches at SHU even though he performed equal work. Gagliardi does not challenge the district court's dismissal of his Equal Pay Act claim, and thus we do not consider it on appeal. However, to the extent that Gagliardi seeks to rely upon evidence of unequal pay as a component of his gender discrimination claim under Title VII, we have considered that argument, as discussed *infra*.

2

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review *de novo* a district court's decision granting a motion for summary judgment, viewing facts in the light most favorable to the non-movant. *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19-20 (2d Cir. 2014); *accord D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party . . . must offer some hard evidence showing that its version of the events is not wholly fanciful.").

Discrimination and retaliation claims arising under Title VII are analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Walsh v. N.Y.C. Housing Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016) (discrimination claim); *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (retaliation claim). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). Once a plaintiff has done so, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Walsh*, 828 F.3d at 75 (internal quotation marks omitted). If the employer articulates such a reason, the plaintiff's claims survive summary judgment only if his evidence "show[s] circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination," *id*. (internal quotation marks omitted), or, in the case of a retaliation claim, that the retaliation "would not have occurred in the absence of the retaliatory motive," *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

3

I.   **The Discrimination Claims**[2]

Gagliardi alleges that he was discriminated against because he was a man coaching a men's team at SHU. As summarized in his amended complaint, Gagliardi alleges that SHU discriminated against him "by paying him less than other, similarly-situated female coaches, by failing to provide the same benefits to him as female coaches, and by failing to provide the same support to him in the form of recruiting, team travel, equipment, uniforms, and supply budgets and provisions of assistant coaches that was provided to female coaches." App'x at 15-16. The district court concluded that Gagliardi failed to satisfy the fourth prong of a *prime facie* case by showing that his treatment as a coach – whether pay, benefits, or resources – occurred under circumstances that gave rise to an inference of discrimination. *Vega*, 801 F.3d at 83. Gagliardi argues that the district court failed to properly consider his evidence of discriminatory intent.

"A showing of disparate treatment – that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). However, Gagliardi "must show [he] was 'similarly situated in all material respects' to the individuals with whom [he] seeks to compare h[im]self" in order to raise an inference of discrimination. *Graham*, 230 F.3d at 39 (quoting *Shumway v. United Parcel*

---

[2] Gagliardi brought his discrimination and retaliation claims under both Title VII and Title IX. We have not determined whether there is a private right of action for employment discrimination under Title IX. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 131 (2d Cir. 2013) (declining to address the issue). Because Gagliardi does not dispute that the legal standard for his claims is identical under Title VII and Title IX, we do not decide whether a private right of action exists under Title IX, but rather conclude that any such claims would fail for the same reasons that Gagliardi's Title VII claims cannot survive summary judgment.

4

*Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)); *accord McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) ("[E]mployees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.").

We agree with the district court that Gagliardi has failed to meet his *prima facie* burden of setting forth evidence that would give rise to an inference of gender discrimination. For example, Gagliardi points to the fact that the coach of the women's tennis team, Mike Guastelle, had a full-time position and a higher salary. As an initial matter, Guastelle was also *male*, and thus is hardly a suitable candidate to establish gender discrimination.[3] In any event, to the extent Gagliardi is pointing to Guastelle to attempt to generally show that men coaching men's sports are treated less favorably as compared to their counterparts for women's teams, Gagliardi overlooks the undisputed fact that Guastelle (who had been employed by SHU for 24 years, as opposed to Gagliardi's 12 years of coaching) was also the Senior Associate Athletic Director and Director of Tennis. Gagliardi even concedes that the record establishes that Guastelle only devoted approximately 30% of his time to coaching.[4] Moreover, as it relates to the core of Gagliardi's claim regarding female coaches, Gagliardi has failed to put forth evidence from which a rational

---

[3] Gagliardi confirmed at oral argument that he is *not* making an associational discrimination claim under Title VII regarding the gender of the team members – namely, that coaches of women's teams (whether the coach is male or female) are treated more favorably than coaches of men's teams.

[4] Gagliardi also argues that SHU's subsequent hiring of a new men's tennis coach, at a significantly higher salary, is evidence of that SHU was disingenuous when it claimed it did not have the resources to make his position full-time. However, the purported replacement coach, also notably a male, had an entirely different role: combined coaching duties for both the men's and women's tennis teams. Thus, his replacement also provides no support for an inference of gender discrimination. In fact, the favorable treatment of Guastelle and Gagliardi's replacement – both males – undermines Gagliardi's assertion that his treatment as a coach was related to his gender in any way.

5

jury could find that any of the women's teams coached full-time by women at SHU were suitable comparators to Gagliardi's position, especially where there was uncontroverted evidence in the record that women's teams in various sports at SHU (of which Gagliardi complained) have significantly more members than the men's tennis team. *See, e.g.*, *Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 691-92 (2d Cir. 2017) (explaining that the mere fact of two employees "whose positions share some common responsibilities" is insufficient to "demonstrate substantially equal work in light of [] drastic differences in job content").

In short, Gagliardi's conclusory assertions that he is similarly situated to female coaches of women's teams is insufficient to satisfy his minimal *prima facie* burden. *See Shumway*, 118 F.3d at 65 ("[S]weeping allegations unsupported by admissible evidence" do not satisfy the requirements for a *prima facie* case.); *see also McIntyre v. Longwood Cent. Sch. Dist.*, 380 F. App'x 44, 49 (2d Cir. 2010) (determining that plaintiff failed to establish a *prima facie* case of discrimination, in part, because plaintiff was not "similarly situated" to proffered comparator, another school principal, in light of the difference in size of their schools); *accord E.E.O.C. v. Madison Cnty. Unit Sch. Dist. No. 12*, 818 F.2d 577, 584 (7th Cir. 1987) (declining to compare "coaching girls' basketball and girls' volleyball to coaching boys' soccer" in a discrimination claim because "wage varies by the sport").

Apart from this unsuccessful attempt to find an even arguably similarly-situated comparator, there is a complete absence of any evidence in the record to support Gagliardi's claim of gender discrimination. To the contrary, as the district court noted, "[m]en hired, re-hired, and supervised Mr. Gagliardi." Special App'x at 19 (citing to the record). Moreover, by Gagliardi's own account, nobody at SHU made "anti-male comments" or "sexist comments against males" to

6

him. App'x at 109. Nor does Gagliardi even attempt to provide any other type of evidence from which an inference of gender discrimination could be drawn.

Accordingly, the district court properly granted summary judgment to SHU on Gagliardi's discrimination claims.[5]

## II. The Retaliation Claim

Gagliardi also challenges the district court's decision to grant summary judgment to SHU on his claim that his termination in September 2016 was in retaliation for his protected activity in the form of written and oral complaints of gender discrimination. Gagliardi primarily argues that the district court erred in concluding that no inference of causation could be drawn from temporal proximity. More specifically, although Gagliardi acknowledges that his first letter to SHU's Human Resources Department complaining of discrimination in October 2015 was almost a full year before his termination in September 2016, he points out that he continued such protected activity into the 2016-2017 academic year, including a second letter to Human Resources in July 2016. Thus, Gagliardi contends that the temporal proximity of the more recent protected activity to his termination "is certainly enough to set forth a *prima facie* case." Appellant's Br. at 33.

However, even assuming that Gagliardi can establish a *prima facie* case of retaliation, SHU has articulated legitimate, non-discriminatory reasons for terminating Gagliardi. In particular, SHU has set forth evidence that in the fall of 2016, while coaching at SHU, Gagliardi started also

---

[5] We note that, in the amended complaint, Gagliardi does not assert that his termination was based upon his gender, but rather only referenced that adverse action in connection with his retaliation claim. In any event, to the extent Gagliardi is attempting to include the termination as part of his discrimination claim, it likewise fails because SHU has articulated a non-discriminatory reason for his termination in terms of poor performance, discussed *infra*, and there is no evidence from which a rational jury could find that his termination was motivated, in any part, by his gender.

7

teaching full time at a high school and that Gagliardi's job performance at SHU then deteriorated in a substantial way, including habitual lateness to practices, missed practices, late arrival to a tournament, and a missed day of a tournament. In light of SHU's articulated reasons for his September 2016 termination, the burden shifts back to Gagliardi to "prove that the desire to retaliate was the but-for cause" of his termination. *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (internal quotation marks omitted). As to that ultimate burden, we have made clear that a plaintiff must have more than evidence of temporal proximity. *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (holding that, although "temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation . . . without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext"); *accord Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014). Here, the district court determined that Gagliardi failed to produce evidence that could meet that ultimate burden. We agree.

Although Gagliardi attempts to create disputed issues of material fact regarding certain aspects of SHU's articulated reasons for his termination, it is uncontroverted that Gagliardi missed between two and five practices in the fall season, that he was significantly late for one of the team's matches in a tournament at Yale University, and that he missed the first day of the three-day University of Connecticut ("UConn") Invitational. Moreover, it is also undisputed that Gagliardi regularly arrived thirty minutes late to every practice he attended in the fall 2016 season because of his other job. To be sure, Gagliardi attempts to provide explanations for his lateness and absences. He notes that he told Guastelle during the week of the UConn Invitational that he was not going to be present for one of the matches, and he also states that he told the players he would

8

be arriving thirty minutes late to each practice and that they should warmup without him during that time. Moreover, he contends that he put SHU on notice that their failure to give him full-time status could result in him missing practices and tournaments. However, he does not dispute that these events occurred, nor does he assert that he received permission to arrive late to practice each day. SHU emphasizes that it "certainly did not sanction Plaintiff's tardiness or absence" and Gagliardi "was not hired to show up when it was convenient for him to do so." Appellee's Br. at 29; *see also id*. at 27-28 ("Plaintiff accepted a full-time teaching job at a public high school for the Fall of 2016, knowing full well that position would conflict with his coaching commitments at SHU. And, indeed, that ended up being the case.").

In any event, even assuming that Gagliardi's explanations regarding the reasons for his absences and lateness created some issue of disputed fact as to the circumstances surrounding that conduct, he has still set forth insufficient evidence to support a rational finding that the articulated reasons were a pretext for retaliation. For example, in his effort to set forth evidence of retaliatory comments, Gagliardi alleges that the Deputy Director of Athletics (Brad Hurlbut) stated he was "tired" of Gagliardi's "bulls***," App'x at 369, and referred to Gagliardi as a "liar," App'x at 440. However, Gagliardi fails to note that the "liar" comment, as is clear from the email at issue, had nothing do to with any complaints by Gagliardi about discrimination, but rather related to Gagliardi's knowledge of the time entry requirements. None of these comments, in context, could be viewed as reflecting a retaliatory pretext. Moreover, Gagliardi points to no evidence suggesting that Guastelle, who was the individual responsible for recommending his termination, harbored any retaliatory animus whatsoever. To the contrary, as the district court noted, there was even uncontroverted evidence that, following Gagliardi's October 2015 complaint regarding gender

9

discrimination, SHU *raised* his salary by forty percent and made him eligible for part-time benefits.

Therefore, even construing the evidence in the record in the light most favorable to Gagliardi, no rational jury could find that SHU would not have terminated Gagliardi "but-for" his complaints of gender discrimination.[6]

\*            \*            \*

We have considered all of Gagliardi's remaining arguments and conclude that they are without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

---

[6] To the extent that Gagliardi also suggests, in a conclusory fashion, that other actions prior to his termination were in retaliation for his complaints (such as his negative performance evaluation for Fiscal Year 2016), we similarly conclude that no rational jury could find that any such actions, individually or collectively, were because of a retaliatory animus.